Scott Edward Cole, Esq. (S.B. #160744)
Laura Grace Van Note, Esq. (S.B. #310160)
**SCOTT COLE & ASSOCIATES, APC**
555 12th Street, Suite 1725
Oakland, California 94607
Telephone: (510) 891-9800
Facsimile: (510) 891-7030
Email: scole@scalaw.com
Email: lvannote@scalaw.com
Web: www.scalaw.com

Attorneys for Representative Plaintiff
and the Plaintiff Classes

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GUERNICA JEAN-JACQUES, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>HILTON EL SEGUNDO LLC,<br><br>Defendants. | Case No. CV 20-04754 DSF (Ex)<br><br>**CLASS ACTION**<br><br>**FOURTH AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>**[JURY TRIAL DEMANDED]** |

Representative Plaintiff alleges as follows:

**<u>INTRODUCTION</u>**

1. Even beyond the 26.0% of adults who already suffer from asthma, or the 21.2% of adults who suffer from chemical sensitivity/multiple chemical sensitivity, there is rapidly-growing concern of the harmful—often disabling—effects of exposure to fragranced products. For particularly susceptible segments of the population (e.g., persons with autism), the disabling effects have been ***found in over three out of four persons***. Regardless of susceptibility, 53.1% of Americans support fragrance-free policies for workplaces, 60.7% would choose a hotel without

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

1  fragranced air and nearly everyone is aware of the health problems and annoyance associated with

2  unwelcome fragrances in eating establishments, on airplanes, in hotel rooms and in other places of

3  public accommodation.

4      2.    During the class period, and despite knowledge of these realities, Hilton Garden

5  Inn LAX/El Segundo, located in El Segundo, California ("Hilton") offered lodging, restaurants

6  and bar service, as well as pool and exercise facilities to the general public but then flooded their

7  lobby and guest rooms with dangerous fragrance, showering unsuspecting guests/patrons with

8  substances known to cause respiratory problems, headaches, skin irritation, and gastrointestinal,

9  cardiovascular and cognitive problems.

10      3.    Indeed, 34.7% of Americans report adverse health effects when exposed to

11  fragranced consumer products[1] such as those piped in through Hilton's HVAC system, and it

12  should come as no surprise: studies show that over 95% of chemicals found in most fragrances

13  derive from petrochemicals including benzene derivatives, aldehydes and phthalates—all of which

14  are highly toxic—the latter being a known endocrine disruptor[2] and the others potential

15  carcinogens. Studies also teach that fragranced products can emit hundreds of different volatile

16  organic compounds (VOCs), some as primary pollutants, and others that react with the ambient air

17  to generate secondary pollutants such as formaldehyde and acetaldehyde[3] (both compounds

18  considered potentially toxic or hazardous under federal law as well as California's "Proposition

19  65" (the Safe Drinking Water and Toxic Enforcement Act of 1986; California Health & Safety

20  Code §§ 25249.5, et seq.).

21      4.    According to one survey, roughly a dozen compounds commonly found in

22  fragrances appear on The Office of Environmental Health Hazard Assessment's Proposition 65

---

[1]  While beyond the scope of damages sought herein, it's worthy to note that numerous sources link fragrances to the onset of asthma symptoms (see, https://www.ewg.org/news-and-analysis/2017/12/avoiding-common-household-asthma-triggers).

[2]  According to one environmental organization, about 75% of all products containing 'fragrance' contain phthalates, which are particularly dangerous for women of childbearing age, with endocrine disruption leading to birth defects or developmental disorders.

[3]  Acetaldehyde, which can be both a primary and secondary emission from air fresheners and air dispersion units, is associated with both acute and chronic hazards to the respiratory system and is classified as a carcinogenic hazardous air pollutant in this nation.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

1  Carcinogens and Reproductive Toxicants list.[4] Another survey revealed that 54 compounds
2  commonly found in fragrances appeared on the California Department of Toxic
3  Substances Control Candidate Chemical List.[5] The United States Environmental Protection
4  Agency has further concluded that some compounds commonly found in fragrances (e.g., synthetic
5  musks) were "toxicologically significant." Synthetic fragrance compounds, in particular, are
6  extremely pervasive, lodging themselves not only in the bloodstream but also in breast milk and
7  fat-storing tissue. When fragrances hit the air, they break down, mix with other pollutants and form
8  new compounds—ones often more irritating and allergenic than the original fragrance.

9  5.    For branding and/or other business purposes believed to maximize revenue and
10 profitability, Hilton exposed tens of thousands of individuals to these pollutants during the class
11 period, without warning, and without ample regard to the short term, long term and/or
12 discriminatory impact upon disabled persons of their reckless conduct.

13 6.    This action is brought to redress and end this prolonged pattern of unlawful conduct
14 once and for all. Representative Plaintiff, therefore, brings this action on behalf of herself as well
15 as on behalf of California classes of all persons harmed by the toxic doses of fragrance at Hilton
16 Garden Inn LAX/El Segundo, (through its owner/operator, defendants Hilton Worldwide Holdings
17 Inc. and Hilton Reservations Worldwide, LLC, hereinafter "Hilton" or, in tandem with their Doe
18 defendants, "Defendants") at any time during, at least, the "limitations period," as identified below.

19 7.    Representative Plaintiff, on behalf of herself and members of the respective classes
20 (hereinafter "class members" in one or more of the classes identified herein) seeks damages,
21 interest thereon, injunctive and other equitable relief, reasonable attorneys' fees and costs due to
22 Defendants' numerous unfair, unlawful and deceptive business practices, as detailed herein, which
23 run afoul of a multitude of California state laws, including unfair competition laws.

24 8.    Representative Plaintiff asserts that, during the limitations period defined below,
25 Hilton had maintained, and continues to maintain, a consistent policy of releasing fragrance
26 compounds upon individuals as they traverse the Hilton's front entrance. Indeed, by the time these

27

28
---
[4]    https://oehha.ca.gov/proposition-65/proposition-65-list
[5]    http://www.womensvoices.org/2015/12/10/toxic-chemicals-found-in-fragrance/

1 unsuspecting guests/patrons are aware of the pervasive scents/toxins, it's simply too late; for those

2 with recognized disabilities such as fragrance/chemical/multiple chemical sensitivities, autism,

3 etc., the fear, apprehension and emotional distress can be intense, not to mention the

4 physiological manifestations predictably attendant to the exposure. Even for those persons lucky

5 enough to not share this level of susceptibility, the exposure remains, at best, an annoyance, an

6 unwanted touching (battery) and/or a disruption to their culinary and other hoped-for experiences

7 at the Hilton. Indeed, the scents/toxins with which Defendants pollute the Hilton can be detected

8 throughout the hotel, in restrooms, in dining and bar areas and in the guest rooms.

9      9.      For the class allegations, the "limitations" period is designated as the time from

10 November 25, 2015 through trial, based upon the allegation that the violations, as described more

11 fully below, have been ongoing throughout that time.

12      10.     Despite actual knowledge of these facts and legal mandates, Defendants have and

13 continue to enjoy an advantage over their competition and a resultant disadvantage to class

14 members.

15      11.     Representative Plaintiff is informed and believes and, based thereon, alleges that

16 Defendants' officers knew of these facts and legal mandates yet, nonetheless, repeatedly

17 authorized and/or ratified the violation of the laws cited herein.

18

19                          **JURISDICTION AND VENUE**

20      12.     In prior versions of the Complaint, this Court had jurisdiction over the

21 Representative Plaintiff's and class members' claims for damages and penalties, and for attorneys'

22 fees (under, *inter alia*, California Code of Civil Procedure § 1021.5), and for claims for injunctive

23 relief arising from Defendants' unfair, unlawful and deceptive practices (under California Business

24 & Professions Code § 17200, et seq.) under Federal Question jurisdiction. However, the filing of

25 this Fourth Amended Complaint removes all federal claims. Representative Plaintiff reserves the

26 right to move this Court for an order declining to exercise supplemental jurisdiction over the case

27 as now plead under 28 U.S.C. §1367(c)(2) and to remand the matter to state court.

28      13.     Venue as to Defendants is proper in this judicial district pursuant to California Code

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

of Civil Procedure § 395(a). Defendants owned and operated a hotel within the County of Los Angeles (where Representative Plaintiff and numerous class members visited), transacted business, had agents, and was otherwise within this Court's jurisdiction for purposes of service of process. The unlawful acts alleged herein have and have had a direct effect on Representative Plaintiff and those similarly situated within the State of California and within the County of Los Angeles.

**REPRESENTATIVE PLAINTIFF**

14.     Representative Plaintiff Guernica Jean-Jacques is a natural person who visited and/or patronized the Hilton Garden Inn LAX/El Segundo hotel and was exposed to and damaged by chemical substances (including carcinogenic and/or other hazardous air pollutants, and particulate matter) as a result of the exposure during the class period.

15.     Representative Plaintiff suffers from fragrance and chemical sensitivities and, when exposed to fragrances, is substantially limited in her ability to breathe. Consequently, Representative Plaintiff is "physically disabled," as defined by all applicable California and United States laws, and a member of the public whose rights are protected by these laws.

16.     Generally, when Representative Plaintiff (and her fellow class members) are exposed to fragrances, she/they experience symptoms such as respiratory problems, headaches, skin irritation, and gastrointestinal, cardiovascular and cognitive problems. Representative Plaintiff is capable of distinguishing between the chemical fragrances used by Defendants and natural scents because fragrances immediately result in physical effects to her body, whereas natural scents cause no such reactions. Specifically, when Representative Plaintiff is exposed to fragrance, her throat begins to tighten which gives her the sensation that her airway has become impeded. As exposure to the fragrance continues, the symptoms expand to her neck which becomes sore, and then causes excruciating headaches. These symptoms are often accompanied with feelings of nausea. Even when Representative Plaintiff escapes the fragrance, those symptoms continue for many hours, and typically do not resolve for several days.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL. (510) 891-9800

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

17.    As a result, Representative Plaintiff and many class members seek to avoid exposure to these harmful fragrances. Representative Plaintiff and many class members will also avoid, in most instances, business establishments where fragrances are used.

18.    For this very reason, Representative Plaintiff contacted Defendants before booking a room at their hotel to check whether fragrance was used in the common areas or the guest rooms.

19.    Defendants (through their customer service representative) assured Representative Plaintiff that her guest room would be fragrance free. In fact, Defendants bragged about their "Pure-Allergy Friendly Hotel Rooms."[6]

20.    However, as it turns out, the room given to Representative Plaintiff when she arrived was far from "pure"[7] and contained the same fragrance, piped in through the HVAC system, as the rest of the hotel.

21.    As used throughout this Complaint, the terms "Plaintiff classes" and/or "class members" refers to the named Representative Plaintiff as well as each and every person eligible for membership in one or more of the sub-classes, as described and defined below.

22.    The Plaintiff classes consist of all members who have visited and/or patronized Hilton Garden Inn LAX/El Segundo hotel and been exposed, in some way, to chemical substances (including carcinogenic and/or other hazardous air pollutants, and particulate matter) as a result of the release of said chemical substances by Defendants.

23.    The degree, if any, to which class members were affected by the conduct of Defendants and/or were eligible to recover damages and penalties therefor is subject to further proof and or statistical analysis to be performed at a later stage in the litigation.

24.    At all times herein relevant, the Representative Plaintiff was and now is a person within each of the classes of persons described and defined herein. The Representative Plaintiff brings this action on behalf of herself and as a class action pursuant to California Code of Civil Procedure §382, on behalf of all persons or entities similarly situated and proximately damaged by the toxic chemical compounds and/or particulate matter discharge described herein.

---

[6] See https://hiltonhonors3.hilton.com/en/about/pure.html
[7] In fact, upon information and belief, these "Pure" rooms are treated with additional chemicals not used in other rooms, including sanitizers and synthetic essential oils.

**DEFENDANTS**

25. The Hilton (through its owner/operator, defendant Hilton El Segundo, LLC) is a facility open to the public, intended for non-residential use, and their operation affects commerce. The Hilton is therefore a public accommodation as defined by applicable state and federal laws.

26. Those defendants identified as Does 1 through 100, inclusive, are and were, at all relevant times herein mentioned, officers, directors, supervisors, agents and/or employees of some/each of the remaining defendants and/or other business entities organized for the purpose of providing lodging, restaurant and other services to the public.

27. Representative Plaintiff is unaware of the true names and capacities of those defendants sued herein as Does 1 through 100, inclusive and, therefore, sues these defendants by such fictitious names. Representative Plaintiff will seek leave of court to amend this Complaint when such names are ascertained. Representative Plaintiff is informed and believes and, on that basis, alleges that each of the fictitiously-named defendants was responsible in some manner for, gave consent to, ratified, and/or authorized the conduct herein alleged and that the Representative Plaintiff's and class members' damages, as herein alleged, were proximately caused thereby.

28. Representative Plaintiff is informed and believes and, on that basis, alleges that, at all relevant times herein mentioned, each of the defendants was the agent and/or employee of each of the remaining defendants and, in doing the acts herein alleged, was acting within the course and scope of such agency and/or employment.

**CLASS ACTION ALLEGATIONS**

29. Representative Plaintiff brings this action on behalf of herself and as a class action on behalf of all persons similarly situated and proximately damaged by Defendants' conduct including, but not necessarily limited to, the following Plaintiff classes:

**The Personal Injury Class:**
All synthetic fragrance-sensitive individuals who visited the Hilton Garden Inn LAX/El Segundo hotel between November 25, 2015 and the trial of this matter.

**The Injunctive Relief Class:**
All synthetic fragrance-sensitive individuals who visited the Hilton Garden Inn LAX/El Segundo

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

Fourth Amended Complaint for Damages and Injunctive Relief

hotel between November 25, 2015 and the trial of this matter and seek an order enjoining Defendants from releasing fragrances into the air at the Hilton hotel.

**The Punitive Damages Class:**

All synthetic fragrance-sensitive individuals entitled to compensatory damages as a result of the misconduct of Defendants with respect to the release of toxic fragrance compounds and/or harmful particulate matter at the Hilton Garden Inn LAX/El Segundo hotel between November 25, 2015 and the trial of this matter.

30.    Defendants, their officers, directors, employees and subsidiaries are excluded from each of the Classes.

31.    This action has been brought and may properly be maintained as a class action under California Code of Civil Procedure §382 because there is a well-defined community of interest in the litigation and the proposed classes are easily ascertainable.

  a. Numerosity: A class action is the only available method for the fair and efficient adjudication of this controversy. The members of the Plaintiff Class are so numerous that joinder of all members is impractical, if not impossible, insofar as Representative Plaintiff is informed and believes and, on that basis, alleges that there are sufficient class members to meet the numerosity requirement. Membership in the classes will be determined upon analysis of hotel lodging, restaurant, spa, club, conference room reservation, among other records maintained by Defendants.

  b. Commonality: The Representative Plaintiff and class members share a community of interests in that there are numerous common questions and issues of fact and law which predominate over any questions and issues solely affecting individual class members, including, but not necessarily limited to:

   1) Whether Defendants breached duties of care;

   2) Whether Defendants acted recklessly and/or willfully;

   3) Whether Defendants, by their misuse of hazardous substances in commercial quantities, is liable for damages and losses arising from the toxic releases;

   4) Whether Defendants' conduct constitutes a battery and, if so, was it welcomed;

   5) Whether Representative Plaintiff and/or class members are entitled to damages for economic injury, property losses, bodily injury, emotional distress, annoyance and/or inconvenience, among other damages and, if so, what is the appropriate means of calculating such monetary damages;

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL. (510) 891-9800

6)  What are the approximate concentrations of those toxic chemicals and amounts of particulate matter to which Representative Plaintiff and/or class members were exposed;

7)  What are the toxicological properties of the various chemical substances described herein and/or of their breakdown products;

8)  Whether Defendants violated California Business and Professions Code §§17200, *et seq.* by engaging in unfair, unlawful and/or fraudulent business practices;

9)  Whether Defendants were unjustly enriched by, *inter alia*, allowing/permitting use of toxic substances in their hotel facilities and/or engaging in practices which engender unfair competition and/or other practices which threaten interstate commerce;

10) Whether injunctive, corrective and/or declaratory relief and/or an accounting is appropriate;

11) Whether Defendants' conduct rises to the level sufficient to warrant an award of punitive damages.

c.  <u>Typicality</u>: The Representative Plaintiff's claims are typical of the claims of class members. The Representative Plaintiff and class members sustained damages arising out of and caused by Defendants' common course of conduct in violation of law, as alleged herein.

d.  <u>Adequacy of Representation</u>: The Representative Plaintiff is an adequate representative of the plaintiff classes in that the Representative Plaintiff's claims are typical of those of class members and the Representative Plaintiff has the same interest in the litigation of this case as other class members. The Representative Plaintiff is committed to vigorous prosecution of this case and has retained competent counsel who are experienced in conducting litigation of this nature. The Representative Plaintiff is not subject to any individual defenses unique from those conceivably applicable to class members as a whole. The Representative Plaintiff anticipates no management difficulties in this litigation.

e.  <u>Superiority of Class Action</u>: Since the damages suffered by individual class members, while not inconsequential, may be relatively small, the expense and burden of individual litigation by each member makes or may make it impractical for class members to seek redress individually for the wrongful conduct alleged herein. Should separate actions be brought, or be required to be brought, by each individual class member, the resulting multiplicity of lawsuits would cause undue hardship and expense for the Court and the litigants. The prosecution of separate actions would also create a risk of inconsistent rulings which might be dispositive of the interests of other class members who are not parties to the adjudications and/or may substantially impede their ability to adequately protect their interests.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

Fourth Amended Complaint for Damages and Injunctive Relief

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

### TOLLING OF THE STATUTE OF LIMITATIONS

**Fraudulent Concealment Tolling**

32.    All applicable statutes of limitations have also been tolled by Defendants' knowing and active fraudulent concealment and denial of the facts alleged herein throughout the time period relevant to this action.

33.    Instead of disclosing the toxic character of their hotel's common areas, or of their disregard in various other respects of federal and state law, Defendants falsely represented that their practices complied with federal and state standards governing the hotel and restaurant industry and fair competition within interstate commerce, generally, and that it was a reputable business whose representations could be trusted.

34.    For all these reasons, all applicable statutes of limitations have been tolled by operation of the Fraudulent Concealment rule.

### COMMON FACTUAL ALLEGATIONS

**The Nature and Harm of Fragrances**

35.    Contrary to popular belief, most exposure to hazardous pollutants that affect human health and well-being occurs indoors. A primary source of these indoor pollutants and exposures is fragranced consumer products.

36.    A "fragranced consumer product" (or "fragranced product") is a product that contains an added fragrance or that is largely comprised of fragrance. A single "fragrance" in a product may be a complex mixture of dozens of volatile compounds, most of which being derived from petrochemicals.

37.    Although waning in popularity in many contexts/environments, fragrances are still oft-used in hotels to mask odors such as mold smells (occasionally, even the mold buildup in the HVAC ductwork itself) and to promote a signature scent.

38.    However, fragranced products emit hundreds of volatile organic compounds (VOCs) including asthmagens and hazardous air pollutants. Indeed, in analyses of fragranced products, using gas chromatography/mass spectrometry, the most commonly emitted compounds

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

were toxic chiral terpenes (e.g., limonene, alpha-pinene, and beta-pinene). Comparing emissions from fragranced and fragrance-free versions of the same products proves this; chiral terpenes are detected in fragranced versions but not in fragrance-free versions. In addition to being primary pollutants, these terpenes react with ozone in the ambient air to generate secondary hazardous pollutants such as formaldehyde.

39.     Fragrance is a known respiratory irritant and neurological toxin and one in five people in the United States experience adverse health effects from synthetic fragrance exposure. The problem with fragrance products is not the scent itself but the properties of synthetic chemicals from which they are derived such as petroleum or coal tar. Almost one-third of the chemical additives used in perfume are known to be toxic—not a surprise since, over the past 50 years, 80-90% of fragrances have been synthesized from petroleum.

**Everyone is Susceptible to Harm from Unwelcome Fragrances**

40.     Various multi-nation studies have examined the prevalence of fragrance sensitivity and the results are staggering:

- 26.0% of adults are asthmatic and, according to at least one study, 57.8% of them reported adverse health effects from exposure to fragranced products, and 24.1% reported being further disabled (e.g., lost workdays and/or a job) thereby.[8] 31.6% of this sub-population report that they want to leave a business as quickly as possible after entering it if they smell air fresheners or a fragranced product, and 32.9% of them have been prevented from going someplace because they predict they would be exposed to a fragranced product that would make them sick;

- 21.2% of adults suffer from Chemical Sensitivity[9] and/or Multiple Chemical Sensitivity ("MCS"). According to at least one study, 81.3% of this vulnerable sub-population reported adverse health effects from exposure to fragranced products. Results also found that

---

[8] https://www.law.cornell.edu/uscode/text/42/12102https://doi.org/10.1007/s11869-019-00693-w
[9] Chemical sensitivity is a medical condition characterized by adverse health effects from exposure to common chemical pollutants and products.

1  28.6% of individuals with Chemical Sensitivity have lost workdays or a job, in the past year,

2  due to exposure to fragranced products in the workplace;[10]

3      • 32.2% of adults suffer from Fragrance Sensitivity[11] with or without an asthma

4  diagnosis;

5      • 4.5% of the population suffer from Autism/ASDs, of which 60.6% also report

6  suffering from Chemical Sensitivity and 75.8% from Fragrance Sensitivity;

7      • Asthma, Chemical Sensitivity, and Multiple Chemical Sensitivity are

8  considered disabilities for purposes of the Americans with Disabilities Act.[12]

9      41.  Exposure to fragrances can cause such symptoms as (a) migraine headaches, (b)

10  asthma attacks, (c) neurological problems (e.g., dizziness, seizures, head pain, fainting, loss of

11  coordination), (d) respiratory problems (e.g., difficulty breathing, coughing, shortness of breath),

12  (e) skin problems (e.g., rashes, hives, red skin, tingling skin, dermatitis),[13] (f) cognitive problems

13  (e.g., difficulties thinking, concentrating, confusion or remembering), (g) mucosal symptoms

14  (e.g., watery or red eyes, nasal congestion, sneezing), (h) immune system problems (e.g., swollen

15  lymph glands, fever, fatigue), (i) gastrointestinal problems (e.g., nausea, bloating, cramping,

16  diarrhea), (j) cardiovascular problems (e.g., fast or irregular heartbeat, jitteriness, chest

17  discomfort), and (k) musculoskeletal problems (e.g., muscle or joint pain, cramps, weakness).[14]

18      42.  Even for persons not experiencing noticeable physical reactions to fragrance

19  inhalation/contact, Hilton's guests/patrons experience an annoyance and an unwanted touching

20  (a.k.a., a battery) from Defendants' fragranced compounds/particulates, emotional distress, and

21  loss of smell and taste (these latter effects being particularly frustrating for those class members

22  visiting and hoping to enjoy Defendants' restaurant facilities).

23

---

24  [10]  https://link.springer.com/article/10.1007/s11869-019-00672-1

    [11]  "Fragrance sensitivity" is a health condition characterized by adverse effects from exposure to fragranced

25        consumer products.

    [12]  42 U.S. Code § 12102 (https://www.law.cornell.edu/uscode/text/42/12102)

26  [13]  According to the American Academy of Dermatology (AAD), fragrances are considered the leading cause of

          cosmetic       contact dermatitis       (https://www.webmd.com/allergies/features/fragrance-allergies-a-sensory-

27        assault#1). As a health problem, fragrance sensitivity affects millions of people, and studies suggest that

          sensitivity is on the rise. Moreover, fragrances were named "allergen of the year" for 2007 by the American

          Contact Dermatitis Society.

28  [14]  https://link.springer.com/article/10.1007%2Fs11869-017-0536-2

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

**Organizational Reactions to Fragrances**

43.    While still prevalent in some workplaces, restaurants, hotels and other public accommodations, many organizations and governmental agencies are and have taken bold steps toward eradicating toxic fragrances in their own workplaces, some even offering guidance to other entities regarding how to follow suit.

44.    For example, the United States Department of Health & Human Services issued an Indoor Environmental Quality Policy prohibiting fragranced products and fragrance-emitting devices in all interior space owned, rented, or leased by the Centers for Disease Control and Prevention nationwide. As that policy explains,

> "[v]olatile organic compounds (VOCs) are certain organic chemicals that are emitted as gases, often having short- and long-term adverse health effects (see definition in 40 C.F.R. 51.100 (s)). To the fullest **extent** feasible, products (such as fragrances) emitting VOCs are prohibited at all times in all interior space owned, rented, or leased by CDC. Moreover, fragranced products and fragrance-emitting devices of any kind are prohibited at all times in all interior space owned, rented, or leased by CDC. Fragrance is not appropriate for a professional work environment, and the use of some products with fragrance may be detrimental to the health of workers with chemical sensitivities, allergies, asthma, and chronic headaches/migraines." [15]

45.    Similarly, other governmental[16] and private entities, both within the United States and abroad, with high subject matter expertise on the topic have increasing condemned fragrance use in the workplace and/or strongly advocated against it, recognizing the need to adopt clean, fragrance-free environments for citizens and workers. [17]

---

[15]    https://www.chemicalsensitivityfoundation.org/pdf/CDC-2009-Indoor-Environmental-Quality-internal-policy542.pdf

[16]    Representative Plaintiff reserves the right to amend this Complaint to allege a violation of California Health & Safety Code §§10895, et seq. (a.k.a., the Cleaning Product Right to Know Act of 2017), to the extent that further discovery reveals the fragranced products released by Defendants constitutes "Air care product(s)" (§108952(a)). Representative Plaintiff further reserves the right to amend this Complaint to allege a violation of the Safe Drinking Water and Toxic Enforcement Act of 1986 (California Health & Safety Code §§ 25249.5, et seq.), a.k.a., "Proposition 65."

[17]    American Lung Association (Sample Fragrance Free Policy for employers at http://action.lung.org/site/DocServer/fragrance-free-workplace.pdf); a keyword search for "fragrance" on the Job Accommodation Network (JAN) of the Office of Disability Employment Policy yields no fewer than 130 articles on the topic, most of which discussing how to eradicate fragrances from the workplace and using fragrance-free policies as a disability accommodation; see also, discussion of problems with fragrance exposures in the workplace (National Institute of Occupational Safety and Health (NIOSH, at https://www.cdc.gov/niosh/topics/indoorenv/ChemicalsOdors.html); Canadian Centre for Occupational Health & Safety statement re: fragrance-free workplaces (https://www.ccohs.ca/oshanswers/hsprograms/scent_free.html); Massachusetts Nurses Association fragrance free policy sheet (https://www.massnurses.org/health-and-

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12ᵀᴴ STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

Fourth Amended Complaint for Damages and Injunctive Relief

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL. (510) 891-9800

**Defendants' Knowing Operation of an Unsafe Facility**

46.     Defendants' release of harmful compounds upon the unsuspecting public was hardly an accident. Hotels like that operated by Defendants generally maintain elaborate HVAC systems, designed to maintain optimal environmental conditions for guests/patrons. For those facilities wanting to integrate fragrance into those systems, a number of commercial scent dispersion machines ("SDMs") are available to produce a particular (sometimes even "signature") scent— which promise to enhance the guest experience.

47.     Some of the SDMs referenced in the preceding paragraph are depicted here:



48.     The manufacturers of SDMs and/or their partner organizations produce air supply tubes (depicted below) containing concentrated fragrance for use with SDMs. Assisted by the particular facility's HVAC system, SDMs and air supply tubes deliver a steady stream of toxic compound to pre-selected zones within the facility.

safety/articles/chemical-exposures/p/openItem/1346); see, generally, Environmental Health Network (http://ehnca.org/) for references to other fragrance free workplace policies.

49.     At the Hilton, the Defendants aim these toxic compounds directly at guests/patrons as they walk through the Hilton's front door, and in the guest rooms. A rudimentary depiction of the process is shown here:



50.     Vis-à-vis this equipment and process, guests/patrons can be assured a dose of toxins marketed (albeit, ironically) to enhance their hotel experience, but likely to cause skin, respiratory, gastrointestinal, cognitive and other harm.

51.     When used in hotels like the Hilton Garden Inn LAX/El Segundo hotel, the above-depicted equipment and process is often utilized to mask odors such as mold smells (occasionally, even the mold buildup in the HVAC ductwork itself) and to promote a signature scent.

///

///

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL. (510) 891-9800

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

52.    Although there is available a multitude of pre-designed/generic scents offered in the form of fragrances, many of the scents are customized for specific clients to enhance their branding, a few of these commissioned aromas being depicted here:



**24K Magic**
Inspired by: The W ® Hotel
This fragrance has a citrus beginning of bergamot, lemon and lemongrass. The fragrance develops into a floral bouquet of magnol...

BUY NOW





**Across The Universe**
Step into a crisp, clean world as the therapeutic scent of eucalyptus clears your mind and awakens your space while you bask in...

BUY NOW



**Adore**
This alluring scent comprised of luxurious white tea which is complemented by delicate white flower notes of jasmine, peony wit...

BUY NOW

53.    And yet, while fragrances like these are widely-touted by the fragrance manufacturers as tools for enhancing guest experience and maximizing corporate profitability, the public—largely—does not want fragrances in their workplaces, in hotels, on airplanes and in other closed areas.[18] As a result, the injunctive relief sought herein, while primarily sought to protect class members and future guests/patrons of Defendants' business establishment, it satisfies a desire that most people already possess.

54.    Indeed, during the class period, Defendants have received complaints from class members regarding Defendants' use of fragrance, including their health effects on class members. Thus, throughout the limitations period, Defendants knew or had reason to know of the dangerous conditions they were creating and foisting upon class members—and of the heightened risks

---

[18]    53.1% of Americans supportive of fragrance-free policies for workplaces, a number that rises to over 70% for persons with chemical sensitivity. Among the general population (groups studied in the United States, Australia, United Kingdom and Sweden), if given a choice between staying in a hotel with or without fragranced air, 60.7% would choose a hotel without fragranced air.
(https://www.sciencedirect.com/science/article/pii/S0360132319302148?via%3Dihub#sec7)

Fourth Amended Complaint for Damages and Injunctive Relief

naturally attendant to such a condition, including the foreseeable risk of emotional and physical harm to class members.

### FIRST CAUSE OF ACTION
### NEGLIGENCE

55.    Representative Plaintiff incorporates in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

56.    At all times herein relevant, Defendants owed a duty of care to Representative Plaintiff and class members to act with reasonable care so as not to put their health and safety in jeopardy, and not cause them fear, apprehension, emotional distress and/or annoyance.

57.    Defendants did breach their general duty of care to Representative Plaintiff and class members in, but not necessarily limited to, the following ways:

a.  in failing to adequately warn Representative Plaintiff and class members of the dangers of releasing compounds known to cause annoyance, emotional distress and/or short- or long-term physical damage;

b.  in intentionally releasing dangerous quantities of toxic chemical compounds known to cause severe health effects to humans and animals from their facility(ies), for profit;

c.  in failing to exercise reasonable care following complaints made by members of the general public about these noxious compounds and/or their detrimental effects; and/or

d.  in failing to comply with applicable industry standards, internal safety rules, and state and federal safety laws, rules, regulations and standards.

58.    Representative Plaintiff is informed and believes and, based thereon, alleges that the risk of harm to Representative Plaintiff and class members was reasonably foreseeable to Defendants and that Defendants knew, or should have known, that releasing compounds known to cause annoyance, emotional distress and/or short- or long-term physical damage would cause harm to Representative Plaintiff and class members.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL. (510) 891-9800

59. As a direct and proximate result of the above-described willful and unlawful conduct of Defendants, Representative Plaintiff and class members sustained damages, as set forth in this Complaint.

## SECOND CAUSE OF ACTION
### DENIAL OF FULL AND EQUAL ACCESS TO PUBLIC FACILITIES (CALIFORNIA HEALTH AND SAFETY CODE § 19955(A))

60. Representative Plaintiff incorporates in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

61. The express purpose of California Health and Safety Code § 19955(a) is to: "insure that public accommodations or facilities constructed in this state with private funds adhere to the provisions of [California Government Code § 4450, et seq.]" As §19955(a) further explains, the definition of "public accommodation or facilities" includes hotels like the Hilton Garden Inn LAX/El Segundo hotel.

62. California Government Code §§4450 explains that "[buildings constructed with public funds] be accessible to and usable by persons with disabilities." California Health and Safety Code §19955(a), therefore, extends that mandate to privately-funded building projects.

63. Moreover, California Health and Safety Code §19959 states, in part, that "[e]very existing (nonexempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter."

64. Representative Plaintiff alleges the Hilton is a public accommodation constructed, altered, or repaired in a manner that violates Part 5.5 of the California Health and Safety Code or California Government Code §4450 (or both). Hilton was, at no time, exempt under California Health and Safety Code §19956.

65. Defendants' non-compliance with these requirements at the Hilton aggrieved (or potentially aggrieved) Representative Plaintiff and class members with physical disabilities. Accordingly, Representative Plaintiff and class members seek injunctive relief and attorneys' fees, pursuant to California Health and Safety Code §19953.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL. (510) 891-9800

**THIRD CAUSE OF ACTION**
**UNFAIR BUSINESS PRACTICES**
**(CALIFORNIA BUS. & PROF. CODE §§17200-17208)**

66.    Representative Plaintiff incorporates in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

67.    Representative Plaintiff brings this cause of action on her own behalf and on behalf of class members as well as the general public seeking equitable and statutory relief to stop the misconduct and halt and/or minimize any future toxic chemical and/or particulate matter released by Defendants, due to the unfair, unlawful and deceptive business practices described herein. Plaintiff and class members have given funds to Defendants in exchange for, without limitation, food, beverages, restaurant services and lodging, but Defendants' fragrance program and the associated harms detailed herein prevented Representative Plaintiff and class members from receiving the full benefit of their bargain.

68.    The knowing conduct of Hilton, as alleged herein, constitutes an unlawful and/or fraudulent business practice, as set forth in California Business and Professions Code §§17200-17208. Specifically, Hilton conducted business activities while failing to comply with the legal mandates cited herein. Such violations include, but are not necessarily limited to, releasing toxic compounds for the purpose of enhancing Hilton's branding and perceived guest/patron satisfaction, but without sufficient regard for these individuals' health and welfare.

69.    Moreover, in engaging in these unlawful business practices, Hilton has enjoyed an advantage over their competition and a resultant disadvantage to the public and class members.

70.    Hilton's knowing failure to adopt policies in accordance with and/or adhere to these laws, all of which are binding upon and burdensome to Hilton's competitors, engenders an unfair competitive advantage for Hilton, thereby constituting an unfair business practice, as set forth in California Business and Professions Code §§17200-17208.

71.    Representative Plaintiff and class members request that this Court enter such orders or judgments as may be necessary to enjoin Hilton from continuing their unfair, unlawful, and/or deceptive practices.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

72.    Beginning on an exact date unknown to Representative Plaintiff, Defendants committed the acts set forth herein and proscribed by California Business and Professions Code §§17200, *et seq.*, by engaging in unfair, unlawful and deceptive business practices which have resulted in the release of various unhealthful chemical substances into the air onto and/or in close proximity to Representative Plaintiff and class members.

73.    In light of such incidents, Representative Plaintiff is informed and believes, and thereon alleges, that Defendants have repeatedly released toxic chemicals at the Hilton— substances that have subsequently impacted members of the public to their detriment. Representative Plaintiff is informed and believes, and thereon alleges, that these releases are directly attributable to Defendants' pattern and practice of noncompliance with the various applicable health and safety laws, regulations, rules, and safety standards governing Defendants' handling and control of such chemical substances. Representative Plaintiff is informed and believes, and thereon alleges, that Defendants have obtained profits from this business pattern and practice, and that Defendants have obtained an unfair advantage by failing to incur the costs of compliance that are, or should be, incurred by Defendants' competitors.

74.    Defendants' violations of 42 U.S.C. §§12182 and 12183, California Civil Code §§ 51 and 51.5, California Health and Safety Code §§19955, 25249.6, *et seq.* constitute unlawful and/or fraudulent business practices, as set forth in California Business and Professions Code §§17200, *et seq.*

75.    Public policy mandates that a certain level of corrective/preventative actions must be adopted by handlers of hazardous materials/chemicals in order to protect the health and safety of the public and the environment.

76.    Defendants  have clearly established a policy of accepting a certain amount of collateral damage, as represented by the injuries to Representative Plaintiff and class members herein alleged, as incidental to their business operations, rather than accept the alternative costs of full compliance with fair, lawful and honest business practices ordinarily borne by responsible competitors of Defendants  and as set forth in legislation and the judicial record.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

77.     As a direct and proximate result of the above-described willful and unlawful conduct of Defendants, Representative Plaintiff and class members request (a) a judicial determination and declaration of the rights of Representative Plaintiff and class members, as well as the responsibilities of Defendants, with respect to the damages and injuries caused by the release of chemicals described herein; (b) a court order requiring Defendants to remove and forever discontinues use of toxic fragrances at the Hilton and all related facilities so as to prevent future toxic releases.

**FOURTH CAUSE OF ACTION**
**BREACH OF CONTRACT**

119.    Representative Plaintiff incorporates in this cause of action every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

120.    During the limitations period, Representative Plaintiff and class members entered into valid contracts, supported by sufficient consideration, pursuant to which Defendants were obligated to provide Representative Plaintiff with a Pure-Allergy Friendly Hotel Room at the Hilton.

121.    The room, as well as the common areas, were not fragrance free.

122.    Representative Plaintiff and class members performed and/or, prior to the termination thereof, remained ready, willing, and able to perform all material terms of these agreements.

123.    Despite the foregoing, Defendants materially breached their contract(s) with Representative Plaintiff and class members by using scented toxins in the rooms as well as in the common areas, such as the lobby.

124.    As a direct and proximate result of Defendants' breach of express warranty, Representative Plaintiff and class members sustained damages and other losses in an amount to be determined at trial. Further, Representative Plaintiff and class members are entitled to and hereby seek rescission, interest, costs of suit, attorneys' fees and/or other relief the court deems appropriate.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL. (510) 891-9800

## **RELIEF SOUGHT**

**WHEREFORE, the Representative Plaintiff**, on behalf of herself and the proposed Plaintiff classes, prays for judgment and the following specific relief against Defendants, jointly and severally, as follows:

1.      That the Court declare, adjudge, and decree that this action is a proper class action and certify the proposed Classes and/or any other appropriate subclasses under California Code of Civil Procedure §382;

2.      For compensatory and other damages, including, without limitation, damages for medical and related expenses, lost wages, emotional distress, and/or special damages according to proof of each cause of action for which such damages are available;

3.      For injunctive relief, including but not necessarily limited to, an Order (a) requiring Defendants to implement appropriate and sufficient safety procedures, to halt release of toxic substances from their Hilton hotel facility and (b) enjoining Defendants, ordering them to cease and desist from unlawful activities in violation of California Business and Professions Code §§17200, *et seq*.;

4.      Penalties and attorneys' fees pursuant to California Business and Professions Code §§17200, *et seq*.;

5.      For punitive and exemplary damages in an amount to be proven at trial;

6.      For reasonable attorneys' fees, pursuant to California Civil Code §1021.5, on each cause of action for which such attorneys' fees are available;

7.      For interest on the amount of any and all economic losses, at the prevailing legal rate;

8.      For costs of suit and any and all such other relief as the Court deems just and proper, and to which Representative Plaintiff and class members are entitled at law or in equity.

Fourth Amended Complaint for Damages and Injunctive Relief

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

## JURY DEMAND

Representative Plaintiff and class members hereby demand a trial by jury on all issues so triable.

Dated: September 14, 2020                    **SCOTT COLE & ASSOCIATES, APC**

                                        By:    _/S/ Laura Grace Van Note_
                                               Laura Grace Van Note, Esq.
                                               Attorneys for Representative Plaintiff
                                               and the Plaintiff Classes

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL. (510) 891-9800